CLARIBEL VARGAS, ETC., Plaintiff and Appellee, *v.* PEDRO JUSINO, Defendant and Appellant.

No. 9935. Argued May 1, 1950.—Decided May 12, 1950.

---

364

*Víctor Rivera Colón* for appellant. *Santiago Polanco Abréu* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Two causes of action are set up by the plaintiff in her complaint. The first is an action of filiation, based on the concubinage of her parents[1] and on the minor's uninterrupted possession of the status of natural daughter of the defendant, and the second, for support. After preliminary questions of law were raised and disposed of and after an answer was filed in which the essential averments of the complaint were denied, the case went to trial, and both parties offered ample oral evidence. Thereupon, the court rendered judgment declaring plaintiff minor the acknowledged natural daughter of defendant Pedro Jusino, for all legal purposes, and adjudged the latter to pay to the plaintiff an allowance of $20 monthly for her support, from the filing

---

[1] The action of filiation based on the concubinage was abandoned by the plaintiff.

of the complaint, and to pay the sum of $200 as attorney's fees.

On appeal, the defendant contends "that the evidence introduced by the plaintiff does not justify the judgment rendered since said evidence was insufficient and was not consistent with the statutory provisions in force."

 According to the pleadings and the evidence, the plaintiff was born on November 18, 1941. Since the latter admits that at that time the defendant was married to a woman other than her mother, the plaintiff was not a natural child under the law in force at the time of her birth, which is the law that governs actions of filiation. Section 125 of the Civil Code, 1930 ed.[2] *Morales* v. *Heirs of Cerame*, 30 P.R.R. 784; *Méndez* v. *Martínez*, 21 P.R.R. 238. The action of filiation in this case should be considered, consequently, as brought under the provisions of § 2 of Act No. 229 of May 12, 1942 (p. 1296), as amended by Act No. 243 of May 12, 1945 (p. 814), "for the sole purpose of bearing the surname of their parents."[3] Said Section provides:

"Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized *for all legal purposes* by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other.

*"In case the children referred to in this Section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents. The action for this recognition shall be prosecuted in accordance*

---

[2] Section 125, Civil Code, 1930 ed., in force at the time of plaintiff's birth provides in its first paragraph: "Natural children are those born out of wedlock, from parents who, at the moment when such children were conceived or were born, could have intermarried with or without dispensation."

[3] See *Cruz* v. *Andrini*, 66 P.R.R. 119; *Fernández* v. *Heirs of Fernández*, 66 P.R.R. 831.

with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *'It being understood, however,* That such a recognition shall only have the scope herein expressed." (Italics ours.)

Said Act only operates prospectively and the acknowledgment authorized under it, whether voluntary or involuntary, should conform to the provisions of § 125, *supra. Elicier* v. *Heirs of Cautiño,* 70 P.R.R. 407; *Correa* v. *Heirs of Pizá,* 64 P.R.R. 938. The lawmaker failed to make any distinction between the evidence required in ordinary actions of filiation and in actions of filiation brought by the child for the sole purpose of bearing the surname of his father. Since no distinction was made, we must assume that his intention was that in both kinds of actions the evidence should be the same. Did the evidence in this case show that the plaintiff was in the uninterrupted possession of the status of natural child of the defendant? In our judgment it did not. Therefore, the lower court erred in sustaining the first cause of action. In the course of its opinion and judgment it stated that in connection with the action of filiation it considered that the following facts had been fully proved:

"1st. That the defendant Pedro Jusino had sexual relations with Mercedes Vargas, plaintiff's mother, during several years, from and after 1939.

"2d. That the defendant Pedro Jusino established Mercedes Vargas in a room personally rented by him in the residence of Manuel Sánchez and subsequently in the house of Teresa Sánchez, during her pregnancy, at the time of childbirth, and after plaintiff's birth.

"3rd. That from the birth of the plaintiff and for several years thereafter the defendant has furnished support to the plaintiff periodically by giving her different sums of money.

"4th. That the defendant purchased for Mercedes Vargas, plaintiff's mother, a sewing machine worth $50 in order that she could work and earn some money to contribute to plaintiff's support.

"5th. The defendant has furnished support to the plaintiff."

It did not say a single word regarding the possession of status. Indeed such a possession was not shown by the evidence. Even giving credit to plaintiff's evidence alone, as the lower court did, said evidence disclosed that her mother and the defendant met on or about 1939, and since then had sexual relations more or less frequently, until February 24, 1941, when plaintiff's mother became pregnant, giving birth to the plaintiff, as already stated, on November 18 of that same year; that when the minor was born her mother sent a note to the defendant telling him of the child's birth; that he sent her $10 and a bunch of plantains; that subsequently, the defendant continued to send her small sums of money and that later he purchased for her a sewing machine in order that she could work and earn some money; that shortly after the minor was born the defendant went to see her "looked at her, and examined her"; that the defendant has visited the child on different occasions and has treated her as an affectionate father; [4] and that once, in front of the church he took the child in his arms, but that he has not taken the child out because she "never goes out with anybody."

The possession of status referred to in the Civil Code, is the public reputation which a child bears with reference to its natural father, where this reputation is formed by direct acts of the father himself or of his family demonstrative of the true acknowledgment, perfectly voluntary, free and spontaneous. *Fontanez v. Heirs of Buxó*, 36 P.R.R. 202; *Vega v. Heirs of Vega*, 32 P.R.R. 548; *Montalvo v. Montalvo*, 25 P.R.R. 800. Proof of acknowledgment must be strong and convincing. *Méndez v. Martínez, supra.* In this case the evidence introduced by the plaintiff and believed by the court was, as already noted, far from being strong and con-

---

[4] Although Mercedes Vargas, plaintiff's mother, testified that those expressions of affection had been made in public and that Arcadio Medina was present, when the latter took the witness stand he merely stated that he saw that Jusino on two occasions stopped his automobile in front of Mercedes' house, giving money to the minor the first time, and to her mother, the second time.

vincing. The mere fact that plaintiff's mother and the defendant had sexual relations and that the minor was born as a result thereof, was not in itself sufficient to justify the action of filiation herein. This only tends to prove the paternity.

■ Likewise the fact that subsequent to the birth of the child the defendant sent her mother money for her support, went to see the child, caressed her and took her in his arms in public on a single occasion does not constitute sufficient evidence of the possession of status of a natural child. *Torres* v. *Heirs of Caballero*, 39 P.R.R. 654; *Fontanez* v. *Heirs of Buxó, supra; Serrano* v. *Olivero*, 31 P.R.R. 78. As we have repeatedly held, mere proof of paternity, even coupled with kind and affectionate acts, presents or admissions of paternity, will not suffice to give a right of action of acknowledgment. *Morales* v. *Heirs of Cerame, supra.* Since the evidence offered in this case is not of itself sufficient for the filiation based on the possession of status, the first cause of action of the complaint should have been therefore dismissed.

■ Now, although the action of filiation and that for support may be joined, the fact that the one is not successful does not mean that the action for support must also fail. *People* v. *Rodríguez*, 67 P.R.R. 688, note (3) at page 690. *Cf. Cerra* v. *District Court*, 67 P.R.R. 872. The evidence believed by the lower court showed that the plaintiff minor was born within the gestation period as a result of the relations between her mother and the defendant. Once paternity is proved she is entitled to receive support. *Rodríguez* v. *Cruz*, 68 P.R.R. 696; *People* v. *Rodríguez, supra.* The sum fixed by the lower court is consistent with the evidence introduced. On the other hand, the fact that the evidence failed to show that the defendant was obstinate, does not relieve him from paying attorney's fees inasmuch as in this kind of actions such fees form part of the minor's support. *Valdés* v. *District Court*, 67 P.R.R. 288.

The judgment appealed from will be modified, so as to dismiss the complaint in the action of filiation, and as modified, it is affirmed.

---

MR. JUSTICE TODD, JR., dissenting.

I dissent. After a careful examination of the evidence admitted in this case, I am of the view that the same is sufficient to establish plaintiff's status as acknowledged natural child of the defendant under subdivision 2 of the third paragraph of § 125 of the Civil Code, 1930 ed., for the sole purpose of bearing the surname of her father pursuant to § 2 of Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945.

It is not that I consider that the evidence in actions arising under the above-cited Act should be any different from the evidence required in the ordinary action of filiation, but that in accordance with the cases decided by this Court subsequently to *Colón* v. *Heirs of A. J. Tristani*, 44 P.R.R. 163, even though in any one of them the scope of this case may have been limited, the evidence required to establish the possession of status of natural child is not the same as that required in the cases decided prior to *Colón* v. *Heirs of A. J. Tristani, supra*, and which are cited in the opinion of the court.

In the instant case plaintiff's paternity was not only established, but there was also evidence of acts performed by the defendant, sufficient in my judgment to establish the acknowledgment.

The judgment should be affirmed.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ, dissenting.

Because in my judgment it defeats the effectiveness in one of its primary social objectives of Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945, I dissent from the opinion of the Court adjudging the plaintiff minor to continue bearing her mother's surname—Vargas—

and not that of her father—Jusino—despite the fact that her paternity was fully established in this special action for recognition which, for the purposes of bearing the surname of the father, is prescribed by Act No. 229, above mentioned. I dissent because I consider that the decisions of this Court—cited in the opinion—[1] dealing with actions for recognition of natural children under prior legislation are not applicable to the action of special recognition provided by Act No. 229; and because I think that the opinion of the Court, far from giving full expression to the sense of human equities which inspired the legislation under consideration, implies a denial of the evident intention of the lawmaker in adopting such a remedial social statute. I shall explain.

The second paragraph of § 2 of Act No. 229, which was added to it by Act No. 243 of May 12, 1945, established a special action for the recognition of children who, lacking the qualifications of natural children according to prior legislation, were born out of wedlock prior to May 12, 1942, effective date of Act No. 229. Pursuant to the first paragraph of § 2, in force since the approval of the original Act, such children could be recognized *for all legal purposes* by the voluntary action of their parents, and in their default, by that of persons having the right to inherit therefrom. It was for the benefit of these children, when not recognized in the foregoing manner, that the second paragraph was added. This paragraph provides:

"In case the children referred to in this Section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents. The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children; *It being under*

---

[1] *Fontánez* v. *Heirs of Buxó*, 36 P.R.R. 202; *Vega* v. *Heirs of Vega* 32 P.R.R. 548; *Montalvo* v. *Montalvo et al.*, 25 P.R.R. 800; *Méndez* v. *Martínez*, 21 P.R.R. 238.

*stood, however,* that such a recognition shall only have the scope herein expressed."

The case at bar involves the special action of recognition of a child born prior to the approval of Act No. 229, as amended, of parents who lacked the qualification of being able to contract marriage, with or without dispensation, since one of them was already lawfully. married. · What did the lawmaker mean for the purposes of this kind of actions when he stated "The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children"? Analyzing the scope of the amendment of May 12, 1945, the views of the illustrious commentator Dr. Luis Muñoz Morales, set forth in his Annotations to the Civil Code of Puerto Rico, Vol. I, p. 414, are the following:

"The action for this recognition, says the amendment cited, shall be prosecuted in accordance with the procedure fixed by the Civil Code for recognition of natural children; and, therefore, we should refer to § 126 according to which these actions can only be established during the life of the parents or one year after their death, except if the parents shall have died during the minority of the child, in which case, the child may bring this action before the first four years of his having attained his majority." [2]

Despite the fact that in my dissenting opinion in *Eli-*

---

[2] Section 126 of the Civil Code, 1930 ed. provides:

"The action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in the following instances:

"1. If the father or the mother shall have died during the minority of the child, in which case, the child may bring his action before the first four years of his having attained his majority, shall have elapsed.

"2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized.

"In this case the action shall be established within the next six months after the document has been discovered.

"The recognition of a child not having the qualifications provided for in paragraph first of section 125 can be disputed by whomsoever may be affected thereby."

*cier* v. *Heirs of Cautiño*, 70 P.R.R. 415, 427 (which dealt exclusively with the interpretation of the phrase "may be recognized by the voluntary action of their parents..." contained in the *first* paragraph of § 2 of Act No. 229, and not—as in the instant one—with the evidence necessary to sustain the special action of recognition exercised herein for the sole purpose of bearing the surname of her father) I stated as *dictum* that what the lawmaker had set forth in the second paragraph of § 2 was applicable "to the cases included in subdivisions 3 and 4 of § 125 [of the Civil Code] which are the true cases of forced recognition, and not those of subdivisions 1 and 2 already mentioned," [3] my judgment with respect to the application of those subdivisions to this kind of actions, now yields to the more authoritative discernment of the learned civilian above-mentioned.

His theory is more patent and clear if we bear in mind that the provisions of § 125 of the Civil Code, in its third paragraph, establish as substantive law—and not as a mere procedural step— the right of the child to the recognition by the father and the obligation of the latter to recognize him. To require in this action of special recognition for the sole purpose of bearing the surname of the father the same evidence required in cases of recognition of natural children according to the meaning of § 125 of the Civil Code, first paragraph, in force prior to the approval of Act No. 229, and according to the decisions rendered in the light of such concept, would be to interpose between the adulterine or in-

---

[3] Section 125 of the Civil Code, in its third paragraph provides that: "The father is obliged to recognize the natural child:

"1. When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity.

"2. Where the child has uninterruptedly enjoyed the conditions as of a natural child of the defendant father justified by acts of the same father or of his family.

"3. When the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child.

"4. When the child may present any authentic evidence of his paternity."

cestuous child—to whom the legislation under consideration refers—and the surname of the father an unsurmountable obstacle, since it is a human rule of conduct, that it is not usual that a father who begets a child under circumstances which make it a crime, should be inclined to make a public and continuous ostentation of his status of father—which is equivalent to making an ostentation of the fault committed. To require from an adulterine or incestuous child, who brings an action of special recognition for the sole purpose of bearing the surname of his father, proof of the uninterrupted possession of the status of natural child, is a contradiction within the juridical system prevailing prior to the taking effect of Act No. 229, since the status of adulterine or incestuous child precludes the possibility of having enjoyed such condition. To require such a thing would be to attribute to the lawmaker when approving the amendment of May 12, 1945, an idle purpose.

If there were any doubt, however, regarding the scope of the provisions of the statute we should recall that "The most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious is by considering the reason and spirit thereof, or the cause or motives which induced its enactment." Section 19, Civil Code, 1930 ed. The fundamental purpose of the amendment of May 12, 1945, establishing the special action of recognition for the sole purpose of bearing the surname of the father, was undoubtedly to furnish a name to the child who can not be blamed for being an ill-begotten child, demanding it from the person who should not continue to shield himself under his own guilt to deny his child the natural right to be so. The above-cited amendment, in my judgment, has the effect of destroying to a limited extent the immunity given to such father by the juridical order established by previous legislation, without altering in the economic order, the rights to the legitimate or natural succession. Therefore, I think that in this kind of actions once the paternity is satisfactorily

established, as in the instant case, the child's right to bear the surname of his father should be recognized. If the father is considered as such in order to compel him to furnish support to the child, according to § 128 of the Civil Code, 1930 ed., it is sufficient to compel him to give his name to the child. In this manner the legislative intent would be fully accomplished and no alteration would be imposed on the father or—in the established social order—inasmuch as once society discovers the fact that he is a father because he is imposed the obligation to support a child born in the above-stated conditions, nothing is suffered by society or by the father in recognizing to such child the right to bear his surname.

To that effect, I consider that the amendment of May 12, 1945, operates to enlarge the rights of the child who under legislation prior to that of Act No. 229 was considered as adulterine or incestuous, including in § 128 of the Civil Code besides the right to support, the right to bear the surname of the father.

I shall not close this opinion without setting forth the liberal views adopted by this Court in the past in cases of recognition of natural children under legislation prior to that of Act No. 229—*Colón* v. *Heirs of A. J. Tristani* (1932), 44 P. R.R. 163—in which case speaking through Mr. Justice Córdova Dávila, it was stated:

"The decisions of the Supreme Court of Spain require a strong, vigorous, and convincing evidence, revealing with indubitable certainty the blood ties which join him with the person from whom he demands acknowledgment. The severity of the decisions of Spain has its explanation in the prohibition regarding the investigation of paternity, which prevents that these blood ties be established with evidence regarding the relations of an intimate character existing between its alleged parents. But when the natural condition of the child may be established by evidence of his paternity, *once the trial court considers that this fact is proved, judicial discretion should be humane, judicious and liberal, without going beyond the limits of the law,*

*in order that the natural child may find feasible the way to make effective the duties contracted by his father of acknowledging him once the child is engendered and to demand the rights inherent to his filiation.* Paternity is an element which may not be ignored by the trial judge, when evidence to that effect has been presented, in order to reach a conclusion. This evidence could have been ignored in Spain, where the child was not allowed to investigate his origin and where he 'continues to be a legitimate child of chance and the unknown,' as correctly stated by Scaevola, 'although it may be shown that there existed sexual relations between man and woman and that the claimant was born as a result thereof.' This may not happen at present in Spain, where the new Spanish Constitution provides that *filiation can not be the ground of legal privileges, imposes on the parents the same duties toward their children, whether legitimate or illegitimate,* and leaves to the civil laws the regulation of the investigation of paternity. *This should not happen in Puerto Rico where the investigation of paternity is not prohibited by our laws.* (Italics ours):

Nor shall I close the opinion without pointing out, with deep reverence, the words of ample social justice of retired Mr. Chief Justice Del Toro in his dissenting opinion in *Ortiz* v. *Dragoni* (1941), 59 P.R.R. 14, 29:

"There should be no fatherless children. The responsibility that binds the man who begets a human being to his offspring should not be eluded. Once his paternity is established and it is shown that the same has been in any way acknowledged by the father, it should not be permitted that selfishness, family connections, or, the serious material and moral consequences generally attaching thereto, should destroy the first spontaneous urge to which nature itself responded, because that first act embodies truth and justice."

The opinion of the Court herein proclaims that despite having a father there is a daughter without a name. Consequently, I think that the judgment of the lower court should also be affirmed in the action of filiation, recognizing to the plaintiff minor the right to bear the surname of her father.